**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **TAMELA WINGARD,** | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Case No. _____** |
| | * | |
| **U.S. UNWIRED, INC.,** | * | ***JURY TRIAL DEMANDED*** |
| **Defendant.** | * | |
| | * | |

<u>**FIRST AMENDED COMPLAINT**</u>

COMES NOW Plaintiff Tamela Wingard (hereinafter, "Plaintiff"), against the above-captioned defendant, and would show unto the Court as follows:

<u>**JURISDICTION AND VENUE**</u>

1.    Plaintiff files this Complaint and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §1331 and §1343, to obtain compensatory and punitive damages as well as injunctive and declaratory relief.  Defendant violated Plaintiff's rights as guaranteed by the Constitution of the United States and by Federal law, particularly 42 U.S.C. § 2000e, et seq. (Title VII of the Civil Rights Act of 1964, as amended).

2.    Venue is proper since the violations of Plaintiff's rights as alleged herein occurred in Montgomery County, Alabama, and were committed within the Middle District of the State of Alabama.

3.    Plaintiff has exhausted all administrative procedures prerequisite to bringing this action as to her claims under Title VII and the ADEA by virtue of having received a "Notice of Right to Sue," received April 10, 2006, granting her the right to bring this action which

1

was brought within 90 days of receipt of the said letter, thus satisfying jurisdictional requirements and conditions precedent to the bringing of the action.

## PARTIES

4.    Plaintiff, who is over the age of 19 years, is and at all times material hereto was a member of a protected class, female, and a citizen of the United States and the State of Alabama, residing in Autauga County, Alabama.

5.    Defendant U.S. Unwired is a business entity which, at all times material hereto, operated a wireless telephone company operating in Montgomery County, Alabama, among other places.  At all times material hereto, Plaintiff's employer was U.S. Unwired, all stock of which was subsequently bought by Sprint.

## NATURE OF PROCEEDINGS

6.    This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent injunction, restraining the defendants from maintaining a policy, practice, custom or usage of discrimination against Plaintiff because of her sex.  The Complaint also seeks restitution to Plaintiff of all rights, privileges, benefits and income that would have been received by Plaintiff but for the defendants' unlawful and discriminatory practices.  Further, Plaintiff seeks compensatory and punitive damages for the wrongs alleged herein or, in the alternative, nominal damages.  Further, Plaintiff seeks prospective injunctive relief.

7.    Plaintiff avers that the defendant acted to deny Plaintiff her rights under the laws of the United States of America and that such actions by the defendant were designed to discriminate against her as to employment.

8.    Plaintiff avers that the actions of the defendant were intended to specifically deny her rights because she is female.

9.    As a proximate result of the illegal actions alleged above, Plaintiff has been damaged in that she has been deprived of employment, pay, benefits, seniority, tenure, and opportunity for further promotion and pay increases.

10.    As a direct and proximate result of the aforesaid acts of the defendant, Plaintiff has suffered great mental anguish from then until now, and will continue to suffer in the future, and has been greatly humiliated.

11.    Plaintiff avers that the defendant acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of her rights as alleged above and to cause Plaintiff mental anguish and public ridicule and to discriminate against her because of her sex.

## FACTS

12.    Plaintiff expressly adopts as if fully set forth herein the allegations in the foregoing paragraphs.

13.    Plaintiff is a female.

14.    Plaintiff was employed by the defendant in or about July, 2002, as a director over four retail stores and indirect sales of telephone service.

15.    By the time of her termination, Plaintiff had been assigned to cover Business Sales for the defendant throughout the southeast, yet her rate of pay had not increased.

16.    At one point, early in her employment, she experienced a problem with another male employee, which she reported to the defendant's Human Resources Department.  She was criticized by her supervisor, Mike Bennet, vice president of the defendant, for doing so.

17.    Beginning in the early part of 2003, Plaintiff reported to a new vice president, David Wooton, who operated from the company's headquarters in Lake Charles, Louisiana.

18.    Immediately, Wooton began treating Plaintiff differently from her two counterparts, directors Tim Fruge and Kevin King, both males.

19.    Wooton met extensively with Fruge and King in February, 2003, about their year-end reviews; he handed Plaintiff her review in the parking lot.

20.    In January, 2004, Wooton requested that the directors present him with feedback to be discussed at each director's year-end review meeting.  Wooton never discussed with Plaintiff any feedback from her as he had with the male directors.

21.    During his January, 2004, meeting with Plaintiff – in a Chili's restaurant – he upbraided her in a very loud voice, causing her a great deal of embarrassment and humiliation.  At that meeting he presented her with a poor year-end review and a disciplinary write-up complaining about bad decisions he claimed Plaintiff had made.  Prior to that time, Plaintiff had received positive comments about her work.

22.    During the third week of January, Wooton arrived at Plaintiff's office with a representative from the company's HR department and asked for Plaintiff's resignation.

23.    Plaintiff produced the writeup he had given her three weeks earlier and pointed out in detail that all the decisions ascribed to her were actually made by him.

24.    When the HR representative stepped out of the room on an errand, Wooton lowered his head and asked Plaintiff if she still wanted to work for him.  Plaintiff did not tender her resignation, and the matter was dropped.

25.    As of February, 2004, the defendant had determined to "channelize" its sales operations into Retail Sales, Indirect Sales, and Business Sales.  By that time, there were three directors in Plaintiff's area, each of whom would have been competent to handle any one of the channels.

26.    Plaintiff was eventually given Business Sales, an enterprise at which the defendant company had never been successful over the previous five years.

27.    The male director who had handled Business Sales prior to Plaintiff was unsuccessful at meeting sales quotas.  He was not terminated.

28.    Wooton had been vice president over Business Sales for two years and had been unsuccessful at meeting sales quotas.

29.    At the time Plaintiff took over Business Sales, on March 1, 2004, the director's position had been vacant for three months; the sales manager's position had been vacant for four months; the administrative position had been vacant for three months.  Out of a normal ten to twelve sales representatives, only three were left.  Plaintiff was instructed to have the channel fully staffed and achieving 100% of quota by June, 2004.  Plaintiff explained to Wooton that this was impossible, but Wooton never changed the requirements.

30.    During the February, 2004, review period, Wooton refused to complete reviews for the three female sales representatives in Business Sales, directing Plaintiff to complete them.

Wooton completed performance reviews for males. Wooton granted males higher salary increases than females.

31.     During April, 2004, Wooton met with the two male directors, then Joe Hollingsworth and Tim Fruge, for an hour each to review their year-end raises. Wooton handed Plaintiff and her female sales manager their raises in sealed envelopes in the corporate parking lot with no comment.

32.     Between April and July of 2004, Plaintiff and her sales manager developed and presented Wooton a plan that would improve management of the Business Sales channel and improve sales. Wooton refused to discuss it with them.

33.     During August, 2004, Plaintiff was supposed to have received a mid-year review; Wooton never presented her with one.

34.     During the fall of 2004, Mike Bennett held a meeting to produce a plan to increase sales for the Mobile, Alabama, market. The information provided and managed by Bennett only affected Indirect and Retail channels; the Business Sales channel was never discussed.

35.     Following that meeting, Wooton informed Plaintiff that she was to cease advertising for vacant positions in Business Sales; he continued to approve employment advertising for the male directors.

36.     Wooton and Bennett accompanied the male directors to meetings with dealers, yet never went to sales meetings with Plaintiff.

37.     Wooton refused to participate in Plaintiff's quarterly sales meetings; he participated in the male directors' meetings.

6

38.    During December, 2004, Wooton asked the directors for feedback as to what they wished

included in their year-end reviews.  The feedback was due on January 7, 2005, after

which time, Wooton was to review it for inclusion in the later review meetings.  Wooton

informed Plaintiff on January 5, 2005, that her review was scheduled for January 7, 2005,

meaning that he would not await her feedback before putting together her review.  The

review meetings for the male directors was scheduled for the end of January.

39.    During the preceding year, Plaintiff had received no feedback, coaching, or other

assistance from Wooton such as he had provided the male directors.

40.    At her review meeting on January 7th, Plaintiff received a bad review and a writeup.

Wooton did not discuss the review with Plaintiff.  Wooton gave Plaintiff until January 31,

2005, to achieve 100% of quota.

41.    After that meeting, Plaintiff drove to corporate headquarters in Lake Charles, LA, to

complain to Marcy Hines, vice president of Human Resources, about her treatment at the

hands of Wooton.

42.    Neither of the male directors was written up or received a bad review, despite the fact that

they did not achieve 100% of quota.

43.    On February 2, 2005, Plaintiff was terminated, ostensibly for having failed to achieve

100% of quota in the three weeks since the review meeting.

44.    Plaintiff has always performed her duties in accordance with the reasonable expectations

of her employer.

45.    Plaintiff has been damaged in that she has suffered loss of her job, employment

opportunities, opportunities for advancement, and economic loss.  She has suffered

embarrassment and humiliation and great and severe emotional distress and mental anguish because of the conduct of the defendant and its agents.

46.    On or about May 12, 2005, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission's Birmingham District Office.

47.    On or about July 10, 2005, all of the stock of defendant US Unwired was purchased by Sprint Corporation.

## CAUSES OF ACTION

48.    As to each of the following causes of action, Plaintiff expressly adopts as if fully set forth in each cause of action the allegations of all foregoing paragraphs.

## COUNT I – SEX DISCRIMINATION (42 U.S.C. § 2000e)

49.    Plaintiff is a member of a protected group, female.

50.    Plaintiff was qualified for each and every position she held with the defendant.

51.    Plaintiff performed her job to the reasonable satisfaction of her employer.

52.    When compared with her similarly situated male counterparts, Plaintiff was treated in an adversely disparate manner.

53.    The manner in which she was treated adversely affected her job performance.

54.    Plaintiff was subjected to an ultimate adverse employment action, termination, ostensibly for failing to meet quotas.

55.    Her male predecessor in her position also failed to meet quotas, but was not terminated.

56.    Plaintiff has been damaged by the conduct of defendant in that she has been terminated from her position, and has suffered damages as set forth hereinabove.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in her favor as follows:

a)      Enter a declaratory judgment that the discriminatory and harassing practices complained of herein are unlawful and violative of Title VII of the Civil Rights Act of 1964, as amended;

b)      Permanently enjoin the defendants, their agents, successors, officers, employees, attorneys and those acting in concert with it or them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law;

c)      Order modification or elimination of practices, policies, customs, and usages set forth herein and all other such practices shown to be in violation of applicable law that they do not discriminate on the basis of race or age;

d)      As against defendant U.S. Unwired, Inc., grant Compensatory damages of Three Hundred Thousand Dollars ($300,000.00) for violations of Title VII including sex discrimination;

e)      As against the defendant, grant equitable relief to Plaintiff, including back pay and reinstatement or, in lieu of reinstatement, a reasonable sum of money by way of front pay;

f)      In the alternative, grant to Plaintiff nominal damages and equitable relief;

g)      Grant Plaintiff the cost of this action including attorneys' fees and expenses;

h)      Grant such other, further and different relief, both legal and equitable, as this Court may deem just and proper.

RESPECTFULLY SUBMITTED on this the ___8___ day of August, 2006.

/s/JAY LEWIS
Jay Lewis
Attorney for Plaintiff
Law Offices of Jay Lewis, LLC
Post Office Box 5059
Montgomery, Alabama  36103
(334)263-7733 (Voice)
(334)832-4390 (Fax)
ASB-2014-E66J
J-Lewis@JayLewisLaw.com

**PLAINTIFF DEMANDS TRIAL BY JURY**